UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of the Complaint and Petition ) | |
| of G&J Fisheries, Inc. as owner of the F/V ) | |
| GEORGES BANKS, O.N. 10925237 for ) | Civil No. 20-11703-LTS |
| Exoneration from or Limitation of Liability ) | |

ORDER ON SECOND MOTION FOR SANCTIONS (DOC. NO. 108)

November 28, 2022

SOROKIN, J.

Pending before the Court is a motion for sanctions arising out of an unauthorized

inspection of the F/V GEORGES BANKS and related arguments regarding Claimant Amaral's

alleged fabrication of the cause of his injury. The motion is fully briefed and was argued before

the Court on November 21, 2022. The motion remains under advisement pending the submission

of additional information as outlined below.

I.      FACTUAL BACKGROUND

In November 2017, Claimant Peter Amaral was working as a deckhand on the

commercial fishing vessel F/V GEORGES BANKS ("the Vessel"). Doc. No. 9 ¶¶ 8-9. Around

that same time, Amaral suffered a back injury leading to a series of visits with medical providers.

Doc. No. 109 at 2-5.[1] From November 17, 2017 to May 15, 2018, Amaral met with eight

different providers during nine documented medical appointments regarding his injury. Id.

Uniformly, those medical records reflect that Amaral told doctors he injured his back while

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing
system, and pincites are to the page numbers in the ECF header.

lifting a box of scallops, with no mention of a slip and fall or any other event causing his injury

other than the one-time lifting of a box of scallops. See id. (summarizing Amaral's medical

records). The records show:

- On November 17, 2017, Amaral went to the Southcoast Hospital emergency department and reported "diffuse lower back pain which came when he heard a pop while lifting a box of scallops." Id. at 2-3.

- Three days later, Amaral saw his primary care physician and reported that "when picking up a crate of scallops, he heard a pop in his back." Id. at 3.

- On December 12, 2017, Amaral visited Hawthorn Medical Associates and reported a workplace injury, "specifically back pain when lifting a crate of scallops." Id.

- Two days later, Amaral went to Southcoast Physicians Group Neurosurgery and reported that he "picked up [a] basket of scallops, [and] felt a sudden 'pop' in [his] back and bilateral legs." Id.

- On December 29, 2017, Amaral had a follow-up appointment with Hawthorn Medical Associates, again reporting a workplace injury, "specifically back pain when lifting a crate of scallops." Id.

- Five days later, Amaral went to St. Anne's Hospital where he reported back and leg pain that "began as a result of picking up a fishing basket and twisting back in November 2017." Id.

- On January 11, 2018, Amaral visited Southcoast Health Rehabilitation Services and reported that he "grabbed a basket full of scallops and had back pain." Id. at 4.

- On May 3, 2018, Amaral met with Eugenio Martinez, MD at New England Baptist Hospital and reported that "[h]is symptoms began when he lifted a basket of scallops . . . ." Id.

- On May 15, 2018. Amaral went to National Physical Therapy and reported that "while picking up a basket of scallops . . . he felt a 'pop' in his . . . [lower back] and had immediate back pain." Id. at 5.

After almost a year of treatment, on October 4, 2018, Amaral reported being "essentially

pain free" and was cleared for work by Dr. Martinez. Id. That same month, Amaral began

working aboard the F/V BLUE EASTERN and immediately started experiencing pain again,

leading to a follow-up medical appointment with Dr. Martinez and a renewed PT prescription.

Id.

Around November 2018, Amaral retained the law firm Flynn Wirkus Young ("FWY") as counsel in this matter. Id. At that time, FWY employed James A. Comfort, Jr. as a full-time staff investigator, a role Comfort had held at FWY for approximately three-to-four years. Doc. No. 91 at 2. Comfort was no newcomer to admiralty cases or investigations, given his thirty-five years of experience working as an investigator, including significant experience investigating injured scalloper claims. Id. FWY's first name partner, Attorney Michael Flynn, has explained under oath that he is responsible for "overseeing and managing the investigation and litigation of personal injury claims," including personally overseeing the Amaral matter. Doc. No. 73 ¶¶ 2, 4. From these statements, the Court draws the reasonable inference that Attorney Flynn supervised Comfort's investigation.

In November 2018, shortly after Amaral retained FWY, Comfort went to New Bedford to investigate the Vessel.  Of course, nothing prevented Comfort from observing or photographing the Vessel from the dock, shore, or from another boat. Comfort, however, did not restrict himself to these perfectly ordinary, ethical, or legal activities. Instead, Comfort boarded the Vessel without obtaining or seeking permission to do so. No Captain, officer, or G&J crew member approved or even knew of Comfort's unauthorized boarding. Comfort did not merely put one foot on the Vessel to gain a vantage point for observation. Rather, he boarded the Vessel. While aboard the Vessel, Comfort took a series of photos. He walked over to the hatch covering the fish hold. Comfort then removed the hatch cover and proceeded to photograph the interior of the fish hold. Doc. No. 112 at 1-2; Doc. No. 109 at 5-6.  The Court finds these facts based upon an examination of the photographs, the submissions from G&J, and Amaral's concessions at the hearing on the pending motion.

A few weeks after this surreptitious, unauthorized Vessel inspection, Amaral, on December 19, 2018, terminated treatment with Dr. Martinez despite a recommendation from this doctor to follow up in two weeks. Doc. No. 109 at 6. During Amaral's last PT appointment in February 2019, the medical provider noted that Amaral had "reached a plateau in his recovery" and was "self limiting in function." Id.

On March 15, 2019, FWY submitted a privilege log to G&J in the declaratory judgment action (18-cv-12468) disclosing the existence of the photos taken aboard the Vessel during Comfort's unauthorized inspection. [2] Doc. No. 102-1. A later, cursory inspection of the photos by the Court led to the reasonably obvious conclusion that Comfort took at least some of the photographs from aboard the Vessel. Doc. No. 107.  In short, Flynn knew what Comfort had done no later than when he disclosed these photographs in his privilege log, but at no point until this briefing did Flynn address the impropriety of Comfort's actions.

In April 2019, there was a noticeable change to Amaral's recounting of his November 2017 injury, specifically in that Amaral began to describe his injury as involving a slip and fall in the Vessel's fish hold in addition to the injury incurred while lifting a basket of scallops. Records show:

- On April 23, 2019, Amaral reported in his OSHA complaint against G&J that he was "first injured after slipping in the vessel's shaft alley on a slick and slippery surface," the first reported mention of a slip and fall. Id.
- On June 12, 2019, Amaral visited MGH Newton Wellesley and reported that his injury originated with a slip and fall in the fish hold. Id. at 8. This is the first recorded mention of a slip and fall in Amaral's medical records.
- On August 13, 2019, Amaral testified at his deposition that his injury began when he slipped and fell on the propeller shaft cover in the fish hold while moving a bag of scallops. Doc. No. 109-19 at 5.

---

[2] The photos were again disclosed to G&J on May 14, 2021 in a privilege log in the present action. Doc. No. 102-2.

- On November 19, 2019, Amaral visited the Office of Dr. Robert Banco and reported that he was injured while slipping on the dock, and then later again in the process of lifting a bag of scallops two days later. Doc. No. 109 at 9.

- On April 22, 2020, Amaral's counsel sent G&J a demand letter claiming that Amaral slipped and fell on a propeller shaft cover below deck. Id. at 10.

- October 26, 2020, Amaral filed a claim in this limitation case, claiming that the injury was caused by the slip and fall on the propeller shaft cover in the fish hold. Id.

- On May 14, 2021, Amaral answered interrogatories stating that the root cause of his injury was the slip and fall on the propeller shaft cover in the fish hold that was further aggravated when lifting a basket of scallops. Id.

In addition to the preceding facts, FWY's conduct at other points of the litigation bears on this motion. From December 2018 to November 2019, FWY carried out a series of ex parte communications in violation of Massachusetts Rule of Professional Conduct 4.2, which gave rise to the first motion for sanctions in this case and subsequent briefing regarding the communications' propriety.[3] See Doc. No. 104. Thus, the present motion for sanctions is not the first time a serious ethical issue has been raised before the Court.

On August 1, 2022, upon realizing that the photos may have been taken during an unauthorized inspection of the Vessel, G&J filed a motion to compel their production. Doc. No. 99. The record contains no explanation for why G&J did not raise this issue earlier, other than its concession of an oversight by counsel. Doc. No. 100 at 2. Amaral has identified no prejudice flowing to him by confronting the issue now rather than in March 2019 when he first disclosed the existence of the photos in a privilege log.

On August 12, 2022, FWY filed its opposition to the motion to compel the photos. At that time, FWY had possession of the photos, which were taken by their long-time staff investigator. FWY also knew from the photos themselves, without the need for any disclosure

---

[3] The Court recognizes that FWY respectfully disputes the Court's determination that the interviews were improper. Doc. No. 112 at 3. Nonetheless, the ruling of the Court stands.

from Comfort, that Comfort took the photos while aboard the Vessel. FWY also knew of no

approval, express or tacit, from G&J permitting Comfort to board the Vessel. Nonetheless, FWY,

on behalf of Amaral, never responded to the central issue raised by the motion—whether the

photos were taken improperly. Instead, FWY merely said the photos were protected as work

product and that G&J's motion was part of a "pattern to obfuscate and further delay this case."

Doc. No. 102 at 1, 3.

The Court ordered Amaral to produce the photographs for ex parte in camera inspection.

Doc. No. 105.  After review of the photographs, which revealed that at least some of the photos

were taken aboard the Vessel, the Court entered the following order:

> The Court has reviewed the photographs submitted for its review. By COB
> September 19, 2022, Plaintiff shall either (1) produce the photographs to Defense
> counsel, or (2) file an affidavit from its investigator stating the location(s) from
> which the investigator took the photographs, including whether he boarded the
> vessel to do so.

Doc. No. 107.  Subsequently, FWY produced the photos to G&J leading to the present motion

for sanctions.

II.     DISCUSSION

In its motion, G&J argues that the Court should order a complete dismissal of the case

with prejudice, or in the alternative, that the Court should issue specific jury instructions

addressing the misconduct, preclude further vessel inspection, and disqualify Amaral's counsel.

When determining which sanctions to impose, courts are to apply a case-by-case approach,

choosing a sanction that best fits the totality and severity of the circumstances. Young v. Gordon,

330 F.3d 76, 81 (1st Cir. 2003). In doing so, courts should balance a variety of factors including

"the egregiousness of the conduct, prejudice to the opposing party, the general policy favoring

adjudication on the merits, the need to maintain institutional integrity, and deterrence of future misconduct." Starski v. Kirzhnev, 682 F.3d 51, 55 (1st Cir. 2012).

Case dismissal is "one of the most draconian sanctions permitted" and should be imposed only in cases of extreme misconduct where lesser sanctions would not be adequate. Vazquez-Rijos v. Anhang, 654 F.3d 122, 127 (1st Cir. 2011). Neither the nature of FWY's conduct nor the harm flowing from it warrants the extreme remedy of dismissal. In the ordinary course, Amaral would obtain an inspection of the Vessel. While wrongful, the conduct itself does not warrant dismissal especially where, as here, nothing suggests any role by Amaral in this behavior.

G&J presses another argument for dismissal. It contends that Amaral, in conjunction with FWY, fabricated the slip-and-fall theory of injury. G&J points to the shift in reports to medical providers after Amaral retained FWY and asserts that obtaining the fish hold photos was the linchpin enabling that shift. The Court is not persuaded that this argument warrants dismissal. G&J overlooks the fact that Amaral had intimate familiarity with the fish hold, having worked in it, making the photographs unnecessary for the alleged fabrication. On the present record, whether Amaral shifted his story or fabricated some or all of the cause of his injury present fact questions for a jury.[4] The evidence before the Court does not sufficiently tie the photos taken by Comfort to any deceitful shift in the theory of the case, if in fact such a shift exists, to warrant dismissal. The request for dismissal is DENIED.

Second, the request to issue specific jury instructions is premature. What the jury should hear in the instructions, if anything, regarding the law governing vessel inspections or related

---

[4] Given this conclusion, the Court declines Amaral's invitation to submit ex parte privileged communications that he says establish a proper basis for the alleged shift of his position on the source of injury. At this juncture, whether Amaral should waive the privilege or call Counsel as a witness to rebut the alleged fabrication are questions for Amaral and his counsel to resolve.

issues are matters best resolved during the pretrial and trial phases of this case, when the Court crafts jury instructions and resolves motions in limine. Should Comfort testify at trial, a significant issue for the parties to consider is whether the Court should instruct the jury on the laws and rules governing vessel inspections so that the jury can properly evaluate Comfort's credibility. The same applies if Amaral offers the photos. The Court defers any resolution of these questions until it hears further from the parties at trial.

G&J asks for two other sanctions: (1) that the Court preclude further vessel inspection and/or (2) that the Court disqualify Claimant Amaral's counsel, FWY, in light of the misconduct at issue in this motion and the misconduct previously found by the Court. Doc. No. 104. The violation here is a serious and significant one. A long-time, experienced investigator intentionally went on private property for a surreptitious, unauthorized Vessel inspection. G&J claims that this is not an isolated incident, but rather part of an ongoing practice. Attorney Flynn is an experienced lawyer with extensive practice in admiralty law. His investigator, who has worked under his supervision for several years, is similarly long experienced in admiralty investigations. Yet, the response to the present issue has consisted of nothing more than repeated accusations that G&J is obstructing the case and an assertion that Comfort's actions merely reflected a "dumb mistake." Doc. No. 112 at 2. These circumstances raise serious concerns and could merit sanctions including, possibly, the two the Court identified above.

III.   CONCLUSION

Before resolving the Motion, the Court requires additional information. Accordingly, the Court ORDERS:

1.   Comfort shall file a signed affidavit under oath addressing: (i) whether from November 2016 to the present, Comfort has inspected or boarded any other vessels without

either a Court Order or express permission, and for any such boardings Comfort shall identify the surrounding circumstances and details; and (ii) the circumstances surrounding the taking of the photographs in this case.

2.    Attorney Flynn shall file a signed affidavit under oath addressing the following: (i) when he first examined the photographs in this case taken by Comfort; (ii) whether he was aware of Comfort boarding one or more vessels without permission and, if so, when he learned of these actions.

3.    Amaral and Attorney Flynn, separately or jointly as they prefer, shall show cause why this Court should not (i) preclude a Vessel inspection as a sanction; (ii) disqualify the law firm of FWY as a sanction; and/or (iii) invoke this Court's disciplinary process provided by the Local Rules.

The foregoing filings are due December 12, 2022.  The Motion remains under advisement.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge