UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In the Matter of the Complaint and Petition
of G&J Fisheries, Inc. as owner of the F/V
GEORGES BANKS, O.N. 10925237 for
Exoneration from or Limitation of Liability

Civil No. 20-11703-LTS

ORDER ON CLAIMANT PETER AMARAL'S
MOTION FOR SUMMARY JUDGMENT (DOC. NO. 168)

February 26, 2024

SOROKIN, J.

This admiralty action began with a petition by G&J Fisheries, Inc. ("G&J") seeking Exoneration from or Limitation of Liability pursuant to the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 30501-12. See Doc. No. 1.[1] In a separate Order filed concurrently with this one, the Court briefly outlined the claims and counterclaims that remain at issue in this suit and denied a motion by BHF Blue Eastern, LLC ("Blue Eastern") for summary judgment on a pair of G&J's counterclaims. See Doc. No. 263. Now, the Court addresses Peter Amaral's motion for summary judgment, Doc. No. 168, which G&J has opposed, Doc. No. 195.

In his motion, Amaral seeks entry of judgment in his favor, as a matter of law, on his Jones Act claims.[2] The Court evaluates Amaral's motion, as it did Blue Eastern's, by applying the well-known Rule 56 standard. See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system. Pincites are to the page numbers in the ECF header.

[2] The Court need not distinguish for present purposes between Amaral's claims of negligence and unseaworthiness, or between the claim he asserts against the vessel and those he asserts against its owner. Each of Amaral's claims turns to some extent on the resolution of the same set of disputed fact questions discussed herein. In any event, Amaral has failed to distinguish in his motion between his claims against the vessel and the owner.

1993) (requiring that the record be assessed "in the light most favorable to the nonmoving party," and that "all reasonable inferences" be drawn "in the nonmoving party's favor"). Viewed through this lens, Amaral's motion fails.

The Court notes at the outset that nowhere in his motion papers does Amaral acknowledge, let alone engage with, the familiar standard that governs motions for summary judgment or the burden the standard imposes on him. See generally Doc. No. 169. Instead, he advances his positions as though Rule 56 does not apply, essentially inviting the Court to join him in ignoring contrary facts and reasonable inferences that support nonmovant G&J's position. Of course, Rule 56 does apply, and it imposes on the Court a duty in this context to reject Amaral's one-sided view of the record.

Moving to the substance of Amaral's motion, he seeks summary judgment based on his view of the evidence concerning three general topics. In particular, he claims: 1) the shaft-alley covers in the fish hold on G&J's vessel lacked a nonskid surface; 2) even if such a surface was present, the covers were slippery with ice; and 3) the lifting practices employed on the vessel were unsafe. See Doc. No. 169 at 16-20. The record before the Court plainly demonstrates, however, that genuine disputes of material fact exist as to each of these three questions. There is conflicting evidence regarding the nature of the shaft-alley cover surfaces. Compare, e.g., Doc. No. 170-7 at 9, 15 (reflecting testimony of one crew member that the cover was slippery and had "no grit to it," and that no nonskid coating had been applied), with Doc. No. 172-6 at 10 (reflecting testimony of G&J's owner that he had constructed the cover using "texture that was applied with the fiberglass [which] would be the nonskid surface"). Evidence regarding the extent to which ice was present, and whether it rendered the cover slippery at the relevant time, is opaque at best. Compare, e.g., Doc. No. 170-7 at 14 (reflecting general testimony of one crew

2

member that ice would collect on the shaft-alley cover and make it slippery), with Doc. No. 184-4 at 3 (reflecting testimony by different crew member that the shaft-alley cover is "textured" with "sandy material on top of it so that when it's wet, it's grippy"). And, there are differing accounts of the lifting practices at issue and the risks they posed. Compare, e.g., Doc. No. 170-33 at 5-6 (showing calculation by Amaral's expert concerning safe lifting limits under certain guidelines and comparing those limits to the weight Amaral claimed to have lifted), with Doc. No. 200-11 at 6 (reflecting testimony by a crew member that there was nothing unsafe about the lifting practices on the vessel). These disputes[3]—ignored by Amaral—preclude entry of summary judgment, because a reasonable jury considering the evidence "could resolve [them] in the favor of" G&J. Rivera-Muriente v Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992); accord Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018).

Accordingly, Amaral's Motion for Summary Judgment, Doc. No. 168, is DENIED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[3] The Court has not recited all of the relevant conflicting evidence but, rather, referenced enough such evidence to demonstrate the genuine disputes of material fact precluding summary judgment.